UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

KING RANGE., JR.

                             Plaintiff,

          -against-

SPRING GREEN LLC AND DIESEL U.S.A., INC.

                             Defendants.
-------------------------------------------------------------x

**1:22 CV 10381**

**COMPLAINT**

**JURY TRIAL REQUESTED**

## <u>COMPLAINT</u>

Plaintiff King Range., Jr. (hereafter also referred to as "Plaintiff"), by counsel, Parker Hanski LLC, as and for the Complaint in this action against Defendants Spring Green LLC and Diesel U.S.A., Inc. (together referred to as "Defendants"), hereby alleges as follows:

### <u>NATURE OF THE CLAIMS</u>

1.  Plaintiff is an individual with a mobility disability due to a physiological condition that prevents him from walking.

2.  Unable to ambulate using his musculoskeletal system, Plaintiff uses a wheelchair for mobility.

3.  Diesel is a clothing store located at 122 Spring Street, New York, NY (hereinafter "Diesel").

4.  Defendants are the owners, operators, and landlord of Diesel.

5.  Diesel is a place of public accommodation.

6.   As detailed more fully below, Defendants violate each of the laws that prohibit disability discrimination by public accommodations through their ownership, operation, control, and lease of, Diesel.

7.   Plaintiff brings this action because Defendants deny him, on the basis of disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations ("equal access") of their place of public accommodation, Diesel.

8.   Upon information and belief, Defendants created architectural elements at Diesel that function as barriers to wheelchair access ("architectural barriers").

9.   Defendants also maintain architectural barriers at Diesel.

10.  The architectural barriers at Diesel- for example, steps at its public entrance- deny entry to Plaintiff, and other individuals that require wheelchairs, due to disability.

11.  The architectural barriers at Diesel also obstruct Plaintiff's ability to access the publicly available offerings therein based on disability.



Stepped Entrance to Diesel at 122 Spring Street

12. By maintaining architectural barriers, Defendants deny Plaintiff, based on disability, equal access to Diesel, a place of public accommodation.

13. The architectural barrier Defendants maintain, deny Plaintiff, a disabled individual that uses a wheelchair for mobility, entry to Diesel.

14. By maintaining architectural barriers, Defendants deny Plaintiff, a disabled wheelchair user, the opportunity to patronize Diesel based on disability - an opportunity Defendants make available to members of the public without mobility disabilities.

15. Defendants discriminate against Plaintiff on the basis of disability as they deny him equal access to Diesel due to his use of a wheelchair for mobility.

16. By denying Plaintiff equal access to Diesel, Defendants unlawfully discriminate against Plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations; the New York Human Rights Law ("State HRL"), New York Executive Law ("N.Y. Exec. Law") Article 15; the New York Civil Rights Law, § 40 *et seq.* ("N.Y. CRL"); and the New York City Human Rights Law ("City HRL"), Administrative Code of the City of New York ("N.Y.C. Admin. Code") Title 8.

17. Defendants violate the ADA, the State HRL, the N.Y. CRL and the City HRL (collectively, the "Human Rights Laws") directly and through the actions, of their agents and employees.

18. Defendants are vicariously liable for the acts and omissions of their employees and agents.

3

19. Defendants chose to ignore the explicit legal requirements that obligate them to make their place of public accommodation physically accessible and usable by persons with disabilities[1].

20. By ignoring their obligation to provide an accessible place of public accommodation, Defendants reveal their indifference to Plaintiff's (and other individuals with disabilities') right to equal access to Diesel, a place of public accommodation.

21. Defendants, undoubtably aware that their decision to maintain architectural barriers in violation of the Human Rights Laws would be indiscernible to most persons, presumed that they would never have to make Diesel accessible and provide equal access to individuals with disabilities.

22. Plaintiff, however, acts to compel Defendants to comply with the Human Rights Laws.

23. Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages and attorney's fees, costs, and expenses, to redress Defendants' unlawful disability discrimination against him in violation of the Human Rights Laws.

24. Plaintiff seeks to have Defendants make Diesel physically accessible to and usable by individuals with disabilities so that Plaintiff, and other persons with mobility disabilities, have the opportunity to fully and equally enjoy the goods, services, facilities,

---

[1] As used in Plaintiff's Complaint the terms "accessible" and "readily accessible to and usable by" mean that the place of public accommodation complies with the design and construction standards referenced in Plaintiff's Complaint and can be approached, entered, and used by people having physical disabilities. *See* 42 U.S.C. § 12183, 28 C.F.R. § 36.406, and N.Y.C. Admin. Code § 27-232; and § 28-1102.1.

privileges, advantages, and accommodations of the Diesel place of public

accommodation.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331 and 1343 as Plaintiff's claims involve federal questions regarding the

deprivation of Plaintiff's rights under the ADA.

26. This Court also has supplemental jurisdiction over Plaintiff's State HRL, N.Y.

CRL, and City HRL claims pursuant to 28 U.S.C. § 1367(a).

27. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because

Defendants' discriminatory acts alleged herein occurred in this district and the place of

public accommodation is located in this district.

## PARTIES

### *Plaintiff*

28. Plaintiff suffers from a physiological condition that inhibits his ability to walk

and which restricts his body motion range and movement.

29. Plaintiff is therefore an individual with a disability under the Human Rights

Laws.

30. Due to his impairment, Plaintiff uses a wheelchair for mobility.

31. At all times relevant to this action, Plaintiff King Range., Jr. has been and

remains a resident of the State and City of New York.

32. Plaintiff enjoys going to the Soho neighborhood in which Diesel is located.

33. Plaintiff goes to the Soho neighborhood in which the Diesel is located,

approximately six to ten times a year.

5

34. Plaintiff goes to Soho to shop and enjoy the neighborhood.

35. When in Soho Plaintiff visits stores that do not have barriers to wheelchair access.

36. During the week of June 6, 2022 Plaintiff was in Soho and wanted to go to Diesel.

37. However, Plaintiff was denied entry to Diesel as at the entrance to Diesel Defendants maintain a step - an architectural barrier which Plaintiff cannot traverse in his wheelchair.

38. Plaintiff desires to enter Diesel to access its offerings when he is in Soho.

39. Despite his desire to access Diesel, Plaintiff is deterred from doing so due to the step at the entrance, and the other architectural barriers detailed in Paragraph 109 herein.

40. Plaintiff personally observed the architectural barriers at Diesel detailed in Paragraph 109 herein.

41. The architectural barriers detailed in Paragraph 109 herein exclude Plaintiff, based on disability, from the equal opportunity to participate in, or benefit from, the goods, services, facilities, privileges, advantages, and accommodations that Defendants offer to the general public at Diesel.

42. Plaintiff would visit Diesel but for the architectural barriers that deny him equal access to the place of public accommodation and the offerings therein.

43. Plaintiff continues to be deterred from visiting Diesel due to the step and other architectural barriers to access extant at the premises.

### *Defendants*

44. Defendant Spring Green LLC is a domestic limited liability company formed pursuant to the New York Limited Liability Company Law.

45. Defendant Spring Green LLC engages in business in New York.

46. A private entity formed pursuant to the New York Limited Liability Company Law, Defendant Spring Green LLC is not a governmental entity.

47. Defendant Spring Green LLC owns the retail portion of the building located at 122 Spring Street in New York County, New York, through a proprietary lease with 122 Spring Green, Inc.

48. The retail portion of the 122 Spring Street building consists of the ground floor and basement (hereinafter referred to as "122 Spring Street").

49. Defendant Diesel U.S.A., Inc. is a foreign business corporation formed pursuant to the General Corporation Law of the State of Delaware.

50. Defendant Diesel U.S.A., Inc a private entity formed pursuant to the Delaware's General Corporation Law, is not a governmental entity.

51. Defendant Diesel U.S.A., Inc. engages in business in New York.

52. Upon information and belief, Defendant Diesel U.S.A., Inc. owns and operates, and at all relevant times has owned and operated Diesel.

53. Upon information and belief, Defendant Diesel U.S.A., Inc. leases the space in which Diesel is located directly from Defendant Spring Green LLC.

54. Upon information and belief, Spring Green LLC and Diesel U.S.A., Inc. have a written agreement for the lease of the Diesel space.

### *The Place*

55. Diesel is located in lower Manhattan, in the neighborhood known as Soho.

56. Diesel's Soho neighborhood is known as "one of New York City's prime shopping districts". *SoHo | The Official Guide to New York City*, NYC: The Official Guide, https://www.nycgo.com/boroughs-neighborhoods/manhattan/soho/ (last visited December 7, 2022).

57. Diesel's Soho neighborhood is also "known for its variety of shops ranging from trendy upscale boutiques to national and international chain store outlets". *SoHo, Manhattan – Wikipedia*, Wikipedia, the free encyclopedia, https://en.wikipedia.org/wiki/SoHo,_Manhattan (last visited December 7, 2022).

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

58. Diesel is operated by private entities as neither of the Defendants is a State or local government; a department, agency, special purpose district, or other instrumentality of a State or local government; or a commuter authority. 42 U.S.C. §§ 12131(1) and 12181(6).

59. The operations of Diesel affect commerce. 28 C.F.R. § 36.104.

60. Diesel, a clothing store located at 122 Spring Street, is a place of public accommodation pursuant to the Human Rights Laws. 42 U.S.C. § 12181 and 28 C.F.R. § 36.104; N.Y. Exec. Law § 292(9); and the N.Y.C. Admin. Code § 8-102.

61. Defendants own, lease, lease to, control or operate Diesel, and the space in which Diesel is located.

62. "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation

8

are 'public accommodations' subject to" the Human Rights Laws. *28* C.F.R. § 36.201(b); *See also* 42 U.S.C. 12182(a); N.Y. Exec. Law §296(2)(a); N.Y.C. Admin. Code § 8-107(4)(a).

63.  Defendant Spring Green LLC, as owner of the retail portion of the building located at 122 Spring Street in which Diesel is located, is an entity required to comply with the Human Rights Laws. *See Id*.

64. Defendant Spring Green LLC, [as] lessor of the space in which Diesel is located is an entity required to comply with the Human Rights Laws. *See Id*.

65. Defendant Diesel U.S.A., Inc. as owner of Diesel, is an entity required to comply with the Human Rights Laws. *See Id*.

66. Defendant Diesel U.S.A., Inc. as operator of Diesel, is an entity required to comply with the Human Rights Laws. *See Id*.

67. The 122 Spring Street building's retail component in which Diesel is sited is also a commercial facility subject to the ADA and the ADA Standards. *See* 42 U.S.C. § 12181(2).

68. Owners of real property located in the City of New York are obligated to repave, reconstruct, repair, and maintain the public sidewalk that abuts their real property. N.Y.C. Admin. Code § 19-152 and § 7-210.

69. Defendant Spring Green LLC, the owner of the basement and ground floor retail portion of the 122 Spring Street building, is required to repave, reconstruct, repair, and maintain the public sidewalk that abuts its real property.

70. Defendant Spring Green LLC therefore controls, manages, and operates the parts of the public sidewalk that constitute Diesel's public entrance.

9

71. Numerous architectural barriers at Diesel prevent or restrict physical access to Plaintiff and other persons with disabilities.

72. The architectural barriers at Diesel include gateway barriers – such as a stepped entrance.

73. The gateway barriers at Diesel exclude Plaintiff and other persons with mobility disabilities from patronizing Diesel, as they completely deny Plaintiff, and other persons that use wheelchairs, the opportunity to enter Diesel.

74. Upon information and belief, Diesel initially opened for business in February, 2022.

Alterations Performed to the 122 Spring Street Building's Retail Portion

75. Upon information and belief, prior to Defendants entering into a lease agreement for the Diesel premises, Defendant Spring Green LLC, directly and through its predecessors in interest, renovated, remodeled, and reconstructed ("Modified") the space now occupied by Diesel after January 26, 1992.

76. Upon information and belief, Defendant Spring Green LLC, directly and through its predecessors in interest, renovated, remodeled, and reconstructed ("Modified") the space no occupied by Diesel between January 26, 1992 and January 1, 2000, and during each of year 2000, 2001, 2005, and 2009.

77. During the year 2000, Defendant Spring Green LLC, via its predecessor in interest, Modified the space Diesel now occupies as it performed structural and nonstructural demolition work to the space now occupied by Diesel, changed the use of first floor and a portion of the cellar to Zoning Use Group 6, and performed structural and

10

non-structural renovations to the space, which included the installation of new stairs to the cellar.

78. Upon information and belief in the year 2000, Defendant Spring Green LLC, via its predecessor in interest, Modified the public sidewalk adjoining the 122 Spring Street building.

79. During the year 2001, Defendant Spring Green LLC, via its predecessor in interest, Modified the mechanical, sprinkler, fire alarm, and plumbing systems for the space now occupied by Diesel.

80. In the year 2001, Defendant Spring Green LLC, via its predecessor in interest, Modified the mechanical, sprinkler, fire alarm, and plumbing systems for the space now occupied by Diesel.

81. During the year 2005, Defendant Spring Green LLC, via its predecessor in interest, further Modified the space now occupied by Diesel performing structural work for a stair opening between the basement and first floor and installing interior partitions and new ceilings in the space.

82. In the year 2009, Defendant Spring Green LLC modified the space now occupied by Diesel when it performed interior demolition work to the space, including removing interior walls, and then built out the space anew installing new walls, retail fixtures and finishes.

83. During the year 2021, to build out Diesel, Defendants Modified Diesel's space as they demolished the existing interior walls, partitions, and fixtures and then built new partitions, walls, and fixtures in the space.

84. During the year 2021 Defendants also Modified Diesel's space when they performed work to its mechanical, plumbing and sprinkler systems.

85. As detailed in paragraphs 75 though 84, the space Diesel occupies was therefore renovated, remodeled, and reconstructed after January 26, 1992.]

86. The renovation, remodeling and reconstruction work performed after January 26, 1992 to the space Diesel occupies included changes that affected, or which could have affected, the usability of the space.

87. The space Diesel occupies is therefore "altered" within the meaning of the ADA. *See* 28 C.F.R. 36.402(b)(1).

88. The renovated, remodeled, reconstructed spaces, areas, and elements of Diesel, including its entrance, are "altered areas" within the meaning of the ADA. *See Id.*

89. The renovated, remodeled, reconstructed spaces, areas, and elements of 122 Spring Street related to Diesel constitute "altered areas" within the meaning of the ADA. *See Id*.

90. The work performed to the space in which the Diesel premises is now located were changes that affected or could have affected the usability of the space now leased, operated, and occupied by Defendant Diesel U.S.A., Inc.

**Defendants' Failed to Follow the Accessibility Requirements Detailed in their Architectural Drawings**

91. The Modifications performed to the space Diesel occupies, prior to and after Diesel's lease of space at 122 Spring Street, were done pursuant to architectural drawings that detailed the work that would be performed to the space. *See* N.Y.C. Admin Code § 27-162 and § 28-104.7.1.

12

92. Upon information and belief, the architectural drawings specified the dimensions and placement of the architectural elements and fixtures. *See Id.*

93. Upon information and belief, the architectural drawings detailed the floor plan, layout, location of fixtures, flooring, entrances, demised spaces, and other architectural elements. *See Id.*

94. Upon information and belief, the architectural drawings also detailed the legal requirements that Defendant Spring Green LLC, including its predecessors in interest, and Diesel U.S.A., Inc were obligated to comply with when they performed design and construction work to the Diesel space. *See Id.*

95. Upon information and belief, the legal requirements detailed in the architectural drawings included the design and construction standards that mandate the provision of physical access for persons with physical disabilities. *See Id.*

96. Upon information and belief, the design and construction standards contained in the architectural drawings included:

 i. the accessibility provisions of the 1968 New York City Building Code, N.Y.C. Admin. Code § 27-292.1 *et seq.* (the "1968 BC"), inclusive of ANSI A117.1-1986 as modified by 1968 BC Reference Standard RS 4-6 (the "1968 Ref Std"[2], and together with the 1968 BC, the "1968 NYC Standards");

 ii. the accessibility provisions of the 2008 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq.* [3] and Appendix E (the "2008 BC"), inclusive of ICC A117.1-2003 (the "2008 Ref Std") and together with the 2008 BC, the "2008 NYC Standards");

 iii. the accessibility provisions of the 2014 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq.* and Appendix E (the "2014 BC"), inclusive of

---

[2] See N.Y.C. Admin Code §§ 27-292.2 and Reference Standard 4-6.
[3] As such provisions (N.Y.C. Admin. Code § 28-1101 and Appendix E) existed prior to December 31, 2014, the effective date of the 2014 BC.

and ICC A117.1-2009[4] (the "2014 Ref. Std., and together with the 2014 BC, the "2014 NYC Standards").

iv. the 1991 ADA Standards for Accessible Design codified in 28 CFR part 36 Appendix A[5]; (hereinafter referred to as the "1991 ADA Standards"); and

v. the 2010 Standards for Accessible Design codified in 36 CFR part 1191 Appendices B and D, and 28 CFR part 36 Appendix A, subpart D (hereinafter referred to as the "2010 ADA Standards", and together with the 1991 ADA Standards, the "ADA Standards").

The 2014 NYC Standards, collectively with the 1968 NYC Standards and the 2008 NYC Standards, are referred to herein as the "NYC Standards". The ADA Standards together with the NYC Standards are collectively referred to herein as the "Accessibility Standards".

97. Upon information and belief, Defendants failed to comply with the Accessibility Standards when they renovated, remodeled, and reconstructed the space now occupied by Diesel.

98. When Defendants Modified Diesel's space and at all times thereafter that they performed design and construction work to its space, Defendants had knowledge of, and specific notice regarding their obligation to comply with the Accessibility Standards.

99. Defendants therefore knowingly failed to comply with the Accessibility Standards when they Modified the space Diesel now occupies.

100.   Defendants also acted with deliberate indifference to the equal access rights of persons with disabilities due to their failure to comply with the Accessibility Standards.

**Defendants' Failed to Follow the Accessibility Requirements Detailed in their Lease Documents**

---

[4] See N.Y.C. Admin Code § 28-1101.2 and Appendix E, § § E101 and E112.
[5] Republished in 28 CFR part 36 Appendix D on Sept. 15, 2010. 28 C.F.R. § 36.104, 75 Fed. Reg. 56236, 56237 (September 15, 2010).

101.    Upon information and belief, the lease agreement between the Defendants for Diesel's premises provides that the space must comply with the Human Rights Laws.

102.    Upon information and belief, the lease agreement between the Defendants for Diesel's premises provides that the space must comply with the Accessibility Standards.

103.    Defendant Spring Green LLC is aware of its obligation to provide an accessible place of public accommodation.

104.    As Defendant Spring Green LLC is aware of its obligation to provide an accessible place of public accommodation, it knowingly and with deliberate indifference fails to comply with the Accessibility Standards.

105.    Defendant Diesel U.S.A., Inc. is aware of its obligation to provide an accessible place of public accommodation.

106.    As Defendant Diesel U.S.A., Inc. is aware of its obligation to provide an accessible place of public accommodation, it knowingly and with deliberate indifference fails to comply with the Accessibility Standards.

107.    As a result of Defendants' failure to comply with the Accessibility Standards, the services, features, elements, and spaces of Diesel are not accessible to Plaintiff as required by the Human Rights Laws. *See* 42 U.S.C. § § 12182(a), § 12183(a), and § 12186(b); N.Y. Exec. Law § 296(2)(a); and N.Y.C. Admin. Code § 8-107(4).

108.    Because Defendants fail to comply with the Accessibility Standards Plaintiff was, and remains, unable to enjoy safe and equal access to Diesel a place that is open and available to the public.

15

109.    Architectural barriers which Plaintiff encountered and those that deter him

from patronizing Diesel include, but are not limited to, the following:

I.    No accessible route from the public sidewalk to the public entrance.
*Defendants fail to provide an accessible route within the site from public streets or*
*sidewalks to the building entrances. See 1991 ADA Standards § 4.1.2(1); 2010 ADA*
*Standards § 206.2.1; 1968 BC § 27-292.5(b); 2008 BC § 1104.1; and 2014 BC §*
*1104.1.*

II.    No accessible public (or non-public) entrances.
Defendants fail to provide that at least 50% of all its public entrances are accessible.
*See 1991 ADA Standards § 4.1.3.8(a)(i).*
*Defendants fail to provide that at least 60% of all its public entrances are*
*accessible. See 2010 ADA Standards § 206.4.1.*
*Defendants fail to provide that ALL its public entrances are accessible. See 1968*
*BC § 27-292.5, 2008 BC § 1104.1, and 2014 BC § 1105.1.*

III.    A step at the exterior side of public entrance with a change in level greater than ½
inch high between the public sidewalk and the entrance.
*Defendants fail to provide that level changes greater than 1/2-inch high are*
*ramped. See 1991 ADA Standards § 4.3.8; 2010 ADA Standards § 303.4; 1968 Ref*
*Std § 4.3.8; 2008 Ref Std § 303.3; and 2014 Ref Std. § 303.4.*

IV.    A platform lift beyond the non-public, locked, entrance and exit located on Greene
Street that does not provide unassisted entry and exit from the lift.
*To the extent that a platform lift is allowed, Defendants fail to provide a platform*
*lift that is not attendant-operated and which provides unassisted entry and exit from*
*the lift. See 1991 ADA Standards 4.11.3; 2010 ADA Standards § 410.1; 2008 Ref*
*Std § 410.1; and 2014 Ref Std. § 410.1*

110.    Upon information and belief, a full inspection of Diesel will reveal the

existence of other barriers to access.

111.    To properly remedy Defendants' discriminatory violations and avoid

piecemeal litigation, Plaintiff requires a full inspection of Diesel so that he may catalogue

other architectural barriers and have Defendants remediate Diesel so that it is accessible

to him.

112. Plaintiff therefore gives notice that, to the extent not contained in this Complaint, he intends to amend his Complaint to include any violations of the Accessibility Standards or Human Rights Laws discovered during an inspection of Diesel.

113. Defendants deny Plaintiff the opportunity to participate in or benefit from their services and accommodations because of disability.

114. Defendants provide Plaintiff and similarly situated disabled persons with lesser opportunity to enjoy the facilities, goods, services, offerings, and accommodations of Diesel, than the opportunity Defendants provide to non-mobility impaired customers.

115. Upon information and belief, Defendants provide non-mobility impaired persons with the physical access Defendants are legally obligated to provide under the N.Y.C. Admin. Code and the N.Y. Executive Law.

116. In stark contrast, Defendants fail to provide Plaintiff and other mobility impaired persons with the physical access Defendants are legally obligated to provide under the N.Y.C. Admin. Code and the N.Y. Executive Law.

117. Defendants' discriminatory policy is clear: Inclusion for non-mobility impaired persons; Exclusion for mobility-impaired persons.

118. Defendants discriminate against Plaintiff, as based on disability, they treat him, and other individuals with mobility disabilities, worse than non-mobility impaired persons.

119. Defendants continue to discriminate against Plaintiff and other mobility impaired customers by limiting and reducing the options available to disabled patrons as compared to the options available to nondisabled customers.

120.    Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures comply with the Human Rights Laws.

121.    Defendants have not provided accommodations or modifications so that Plaintiff and other persons with disabilities can have equal opportunity with respect to Diesel.

122.    Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the Human Rights Laws. This threat is particularly evidenced by the existence of barriers to access at Diesel that deter and deny Plaintiff access based on disability.

123.    As previously noted, Plaintiff is in the Soho neighborhood in which Diesel is located multiple times a year.

124.    Plaintiff desires to visit Diesel when he is in Soho.

125.    While Plaintiff desires to visit Diesel he is frustrated because doing so is not possible because Defendants maintain architectural barriers to access at Diesel which deny him the opportunity to enter Diesel based on his disability and need to use a wheelchair for mobility.

126.    Plaintiff continues to be deterred from visiting Diesel due to the barriers to access Defendants maintain there.

127.    Although Plaintiff desires and intends to visit Diesel he need not engage in a futile exercise – attempting to enter Diesel although the architectural barriers at the premises deny him entry and equal access to the offerings therein based on disability.

128.    Plaintiff desires that Defendants remove the architectural barriers at Diesel so he can have equal access to it and avail herself of the offerings therein.

## ALLEGATIONS RELATED TO TESTER STATUS

129.    In addition to desiring equal access to Diesel for himself, Plaintiff salso acts as an independent advocate for the rights of similarly situated persons with disabilities.

130.    Plaintiff desires that other similarly situated persons do not have their rights to equal access to Defendants' place of public accommodation, Diesel, and the 122 Spring Street commercial facility, violated by Defendants.

131.    So that other individuals with disabilities that require wheelchairs benefit from his advocacy, Plaintiff is a "tester" for the purpose of protecting and enforcing, the equal access rights of similarly situated persons with disabilities at places of public accommodation and commercial facilities.

132.    As a tester Plaintiff acts to determine and ensure that places of public accommodation and commercial facilities are compliant with the ADA and the ADA Standards.

133.    Plaintiff therefore monitors places of public accommodation and commercial facilities to determine that they comply with the ADA and the ADA Standards.

134.    Plaintiff will monitor Diesel and the 122 Spring Street commercial facility to determine and ensure that it complies with the ADA and the ADA Standards.

135.    Should Diesel cease operating at the 122 Spring Street commercial facility Plaintiff will continue to monitor the space it occupied to determine and ensure that prior to the space reopening as a place of public accommodation, it complies with the ADA and the ADA Standards.

136.    As a tester, Plaintiff is additionally motivated to return to Diesel and the 122 Spring Street commercial facility within which it is located.

137.    In addition to his desire to return to Diesel and the 122 Spring Street commercial facility for himself, Plaintiff intends to return to Diesel and the 122 Spring Street commercial facility within which it is located to monitor Defendants' compliance with their obligations under the ADA and the ADA Standards as a means of enforcing his and other similarly situated persons right to equal access.

**FIRST CAUSE OF ACTION**
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)**

138.    Plaintiff re-alleges and incorporates herein all prior allegations set forth in this Complaint.

139.    Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102; 28 C.F.R. § 36.105(a) and (b).

140.    As a direct and proximate result of Plaintiff's disability, Plaintiff requires a wheelchair for mobility and has restricted use of his arms and hands.

141.    "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the ADA. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(b).

142.    The ADA imposes joint and several liability on each of the owner of a building in which a place of public accommodation is located, the lessor of space in a building to a place of public accommodation, the lessee of space in a building for a place

of public accommodation, and the owner or operator of the place of public accommodation. *See* 28 C.F.R. § 36.201(b).

143.    Therefore, pursuant to the ADA, each of the building owner, lessor, lessee, owner, and operator of Diesel, a place of public accommodation is liable to Plaintiff. *See Id.*

144.    None of the Defendants can avoid liability under the ADA by transferring their obligations to comply with the ADA to another entity. 28 C.F.R. 36.201(b).

145.    Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to access Diesel on the basis of disability.

146.    Defendants' policies and practices continue to subject Plaintiff to disparate treatment and disparate impact.

147.    By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are neither desired nor welcome as patrons of Diesel.

148.    Defendants performed design and construction work to build out Diesel but failed to perform the work so that their place of public accommodation, Diesel, complies with the 1991 ADA Standards or the 2010 ADA Standards.

149.    Because Diesel does not comply with the ADA Standards it is not readily accessible to and usable by Plaintiff due to his mobility disability. *See* 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

150.    Defendants discriminate against Plaintiff in violation of the ADA as they built a place of public accommodation that is not accessible to Plaintiff based on disability. *See* 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

21

151.    Defendants fail to provide an integrated and equal setting for the disabled at the Diesel premises in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

152.    In violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2), Defendants failed to make Diesel compliant with the ADA Standards to the maximum extent feasible when they performed work that constituted alterations to Diesel's space.

153.    Defendants failed to provide "readily accessible and usable" paths of travel to the altered primary function areas of Diesel in violation of 28 C.F.R. § 36.403.

154.    Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access at Diesel in violation of 28 C.F.R. § 36.304.

155.    It has been and remains readily achievable for Defendants to make Diesel accessible by complying with the ADA Standards.

156.    By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of 42 U.S.C. § 12182(a), § 12182(b)(2)(A)(iv), and 28 C.F.R. § 36.304.

157.    In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal to the extent Defendants allege that the removal of any of the barriers to access was, and remains, not readily achievable. 28 C.F.R. § 36.305.

158.    Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

159.    Defendants continue to discriminate against Plaintiff in violation of the ADA by maintaining a place of public accommodation, Diesel, that is not compliant with the ADA Standards, and therefore not accessible.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

160.    Plaintiff re-alleges and incorporates herein all prior allegations set forth in this Complaint.

161.    Plaintiff suffers from medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range.

162.    As a result of his impaired bodily functions, Plaintiff suffers from a disability within the meaning of the N.Y. Exec. Law § 292(21).

163.    The State HRL guarantees the right of all individuals to equal opportunity with respect to places of public accommodations, regardless of disability. N.Y. Exec. Law §§ 290 and 291.

**Section § 296(2) Violations: Denial of Equality of Opportunity.**

164.    To protect the guaranteed right of persons with disabilities to equal access, the State HRL provides that it is an unlawful discriminatory practice for owners, lessees, and operators of places of public accommodation "directly or indirectly to refuse, withhold from or deny any of the accommodations, advantages, facilities or privileges" of their place of public accommodation to a person because of disability. N.Y. Exec. Law § 296(2)(a).

165.    Defendants engage in an unlawful discriminatory practice in violation of the State HRL as they directly or indirectly deny Plaintiff "equal opportunity" (*i.e*., equal access) to enjoy the offerings of their place of public accommodation. N.Y. Exec. Law 296(2)(a).

166.    Defendants engage in an unlawful discriminatory practice prohibited by the State HRL as they created and maintain a place of public accommodation, Diesel, that is not accessible to Plaintiff due to disability. N.Y. Exec. Law § 296(2)(a).

167.    Defendants continue to discriminate against Plaintiff in violation of the State HRL by maintaining and/or creating an inaccessible place of public accommodation. N.Y. Exec. Law § 296(2).

168.    Defendants have subjected Plaintiff to disparate treatment by denying Plaintiff equal access to Diesel, their place of public accommodation, because Plaintiff is disabled.

169.    Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff equal access to Diesel because Plaintiff is disabled.

**Section § 296(2)(c) Violations: Failure to Make Readily Achievable Accommodations and Modifications.**

170.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access at Diesel in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(iii).

171.    It remains readily achievable for Defendants to remove the barriers to access at Diesel.

172.    Defendants cannot demonstrate that the removal of the barriers to access at Diesel is not readily achievable. N.Y. Exec. Law § 296(2)(c)(iii) and (v).

173.    Alternatively, should Defendants demonstrate that it is not readily achievable the remove any barriers to access at Diesel, Defendants discriminate in violation of the State HRL as they fail to provide Plaintiff and other persons with disabilities, equal opportunity to enjoy the privileges, advantages, and accommodations they offer at Diesel through alternative methods. N.Y. Exec. Law § 296(2)(c)(v).

174.    It would be readily achievable to make Diesel accessible through alternative methods.

175.    Defendants have failed to make reasonable modifications to their policies, practices, and procedures necessary to provide Plaintiff with access to Diesel, and the privileges, advantages, or accommodations they offer therein in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(i).

176.    Defendants cannot demonstrate that modifying their policies, practices and procedures would fundamentally alter the nature of Diesel or the privileges, advantages, or accommodations they offer.

177.    In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(v).

178.    It is and would have been readily achievable for Defendants to make Diesel accessible to persons with disabilities.

179.    It does not and would not have imposed an undue hardship or undue burden on Defendants to have made Diesel accessible for persons with disabilities.

25

**Section 296(6) Violations: Aid and Abet Discrimination.**

180.    Under the State HRL it is "an unlawful discriminatory practice for any

person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under

this article, or to attempt to do so". N.Y. Exec. Law § 296(6).

181.    Each of the Defendants have aided, abetted, incited, compelled, or coerced

others to engage in unlawful discriminatory practices.

**Section 300: The State HRL's Liberal Construction Requirement.**

182.    In 2019, the New York State legislature amended the Executive Law to

provide increased protections for classes protected by the State HRL. N.Y. Exec. Law §

300, as amended by Chapter 160 of the Laws of 2019, § 6.

183.    The 2019 amendment added language at the start of the State HRL's

Construction section (N.Y. Exec. Law § 300) to explain that the law must be:

> construed liberally for the accomplishment of the remedial purposes thereof,
> regardless of whether federal civil rights laws, including those laws with
> provisions worded comparably to the provisions of this article, have been so
> construed.

*Id*.

184.    With the 2019 amendment, the State HRL is no longer coextensive with

federal anti-discrimination law.

185.    Defendants' conduct is therefore subject to a significantly stricter standard

under the State HRL than under Federal anti-discrimination laws, including the ADA.

186.    The State HRL's stricter standards include those situations where the

ADA has provisions that are comparably worded to the State HRL's provisions. *Id*.

187.    Defendants must therefore provide an accessible place of public accommodation in instances where the ADA does not require Defendants to provide accessibility.

188.    As a direct and proximate result of Defendants' unlawful discrimination in violation of State HRL, Plaintiff has suffered, and continues to suffer emotional distress, including humiliation, embarrassment, stress, and anxiety.

189.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)

190.    Plaintiff re-alleges and incorporates herein all prior allegations set forth in this Complaint.

191.    Plaintiff suffers from medical conditions that separately and together, impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range.

192.    Due to his impaired bodily functions, Plaintiff has a disability within the meaning of the City HRL. N.Y.C. Admin. Code § 8-102.

**Section 8-107(4)(a)(1)(a) Violations: Denial of Equal Opportunity.**

193.    The City HRL guarantees the right of all individuals, regardless of disability, to equal opportunity (*i.e.*, equal access) to places of public accommodations.

194.    "Equal access, in the words of the City HRL, is the opportunity to have "full and equal enjoyment, on equal terms and conditions" to the accommodations,

27

advantages, services, facilities, and privileges of a place of public accommodation.

N.Y.C. Admin. Code § 8-107(4).

195.    Defendants engage in an unlawful discriminatory practice prohibited by the City HRL as they created and now maintain a place of public accommodation, Diesel, which is not accessible to Plaintiff due to disability. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

196.    Defendants are also liable for the conduct of their employees and agents which resulted in the creation and maintenance of a place of public accommodation which is not accessible. N.Y.C. Admin. Code § 8-107(13).

197.    Because Defendants created and maintain a place of public accommodation that is not accessible to Plaintiff due to disability, Defendants directly and indirectly "refuse, withhold from, or deny" Plaintiff equal opportunity to enjoy the "accommodations, advantages, services, facilities or privileges" of Diesel due to his disability.

198.    Defendants' policies and procedures inclusive of their policies of refusing to expend funds to design, create and maintain an accessible place of public accommodation is a discriminatory practice in violation of City HRL. N.Y.C. Admin. Code § 8-107 (4).

199.    Defendants' failure to construct and maintain an accessible entrance from the public sidewalk to Diesel constitutes disability discrimination in a violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a); *See* also N.Y.C. Admin. Code § 19-152 and § 7-210.

28

200.    Defendants' failure to provide an accessible place of public accommodation and consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination. in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

201.    Defendants discriminate against Plaintiff as they subject him to disparate impact in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4).

202.    Defendants subject Plaintiff to disparate impact as they directly and indirectly deny Plaintiff equal opportunity to enjoy the accommodations, advantages, facilities, and privileges of Diesel because of his disability.

203.    Defendants' policies or practices, "whether neutral on their face and [or] neutral in intent"[6] result in a disparate impact to the detriment of the individuals with mobility disabilities, the protected class of which Plaintiff is a member. *See* N.Y.C Admin. Code § 8-107(17).

204.    Defendants' failure to comply with the NYC Building Code as well as their failure to expend monies to upgrade and alter Diesel to remove obsolete features such as stepped entrances, are policies and practices that have a significantly adverse and disproportionate impact on persons with mobility disabilities, including Plaintiff.

205.    Because the result of Defendants' policies and practices is a place of public accommodation that is not accessible to people with mobility disabilities, Plaintiff has demonstrated that Defendants' policy or practice has a disproportionately negative impact on the disabled including Plaintiff.

---

[66] *Levin v Yeshiva Univ.*, 96 NY2d 484, 489(2001).

**Section 8-107(15) Violations: Failure to Provide Reasonable Accommodations.**

206.    Defendants also discriminate against Plaintiff in violation of the City HRL as they have not made reasonable accommodations for the needs of persons with disabilities. N.Y.C. Admin. Code § 8-107(15)(a).

207.    Defendants' failure to make reasonable accommodations include their failure to remove the architectural barriers to access detailed in Paragraph 109 herein so that individuals with disabilities, including Plaintiff, have equal opportunity to enjoy what Defendants offer at Diesel. *See Id*.

208.    Defendants have known, or should have known, that members of the public, which includes current and prospective patrons such as Plaintiff, have mobility disabilities.

209.    Defendants have known, or should have known, reasonable accommodations (including by failing to remove the architectural barriers to access detailed in Paragraph 109 herein) are required so that persons with mobility disabilities can have the equal opportunity to enjoy what Defendants offer at Diesel.

210.    It would not cause undue hardship in the conduct of the Defendants' business to remove the architectural barriers to access detailed in Paragraph 109 herein as a reasonable accommodation for persons with disabilities.

211.    Defendant cannot demonstrate that it would cause undue hardship to the conduct of their respective businesses to remove the architectural barriers to access detailed in Paragraph 109 herein as a reasonable accommodation for persons with disabilities.

212.     Defendants' failure to provide reasonable accommodations for persons with disability, inclusive of Defendants' failure to remove the barriers to access identified in Paragraph 109 herein, and their consequent denial of equal opportunity to Plaintiff, constitutes an ongoing continuous pattern and practice of disability discrimination in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

**Section 8-130: The City HRL's Construction and Maximally Protective Role.**

213.     To further the City HRL's "uniquely broad remedial purposes" (Local Law No. 85 (2005) of City of New York § 7) and to ensure that it the law is "maximally protective of civil rights in all circumstances" (Local Law No. 35 (2016) of City of New York § 1), the New York City Council amended the City HRL's Construction provision, N.Y.C. Admin. Code § 8-130, in 2005 and 2016. Local Law 85 (2005), and Local Law 35 (2016).

214.     The 2005 and 2016 amendments confirm that the City HRL is not coextensive with federal or state civil rights laws "regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably worded to provisions of this title, [the City HRL,] have been so construed". N.Y.C. Admin. Code § 8-130(a), as amended by Local Law 85§ 7 and Local Law 35 § 2.

215.     The 2005 and 2016 amendments instead provide that the City HRL's protections are cumulative to the protections provided by federal or state civil rights laws, as the City HRL must "be interpreted liberally and independently of similar federal and state provisions" to accomplish the City HRL's uniquely broad and remedial purposes "as one of the most expansive and comprehensive human rights laws in the nation". Rep of Governmental Affairs Div, Comm on Civ Rights at 6 and 8, March 8, 2016, Local Law

31

Bill Jacket, Local Law No. 35 (2016) of City of NY (Adding to Local Law 85 § 1's already explicit language which provided that the obligations imposed on entities subject to the City HRL by "similarly worded provisions of federal and state civil rights laws [are] as a floor below which the City's Human Rights law cannot fall.").

216.     The 2016 Amendments to the City Human Rights Law additionally direct that "[e]xceptions to and exemptions from the provisions of this title [(the City HRL)] shall be construed narrowly in order to maximize deterrence of discriminatory conduct". N.Y.C. Admin. Code § 8-130(b), as amended by Local Law 35 (2016) § 2.

217.     Due to the above-referenced amendments, the New York City Human Rights Law provides significantly greater protections to its protected classes "in all circumstances" than what the ADA and State HRL provide to persons in the same protected classes.

218.     Defendants' conduct is therefore subject to a markedly stricter standard under the City HRL than under Federal and state anti-discrimination law

219.     Defendants' liability under the City HRL for their conduct alleged herein must be determined separately and independently from their liability under the ADA or State HRL, to the extent that Defendants escape liability under the ADA or State HRL. N.Y.C. Admin. Code § 8-130, as amended by Local Law 85 and Local Law 35.

220.     Conversely to the extent that Defendants' conduct alleged herein violates the ADA or State HRL, Defendants automatically violate the City HRL.

221.     Therefore, Defendants' violations of the ADA, the ADA Standards, and the State HRL alleged herein constitute discrimination under the City HRL.

222.     Defendants continue to discriminate based on disability in violation of the City HRL (N.Y.C. Admin. Code § 8-107(4)) due to their ongoing violations of the ADA, the ADA Standards, and the State HRL alleged herein.

223.     The City HRL's stricter standards also apply in situations where the ADA and the State HRL have provisions that are comparably worded to the City HRL's provisions. N.Y.C. Admin. Code § 8-130.

224.     Defendants must therefore provide an accessible place of public accommodation, regardless of their obligation to provide accessibility under similarly worded provisions of the ADA or the State HRL.

**Section 8-107(6) Violations: Aid and Abet Discrimination.**

225.     In violation of the City HRL, Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation, all because of disability. N.Y.C. Admin. Code § 8-107(6).

226.     Each of the Defendants have aided and abetted others in committing disability discrimination.

227.     Defendants' conduct constitutes an ongoing and continuous violation of the City HRL.

228.     Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.

229.    In particular, Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' place of public accommodation.

230.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the City HRL, Plaintiff has suffered, and continues to suffer emotional distress, including humiliation, stress, and embarrassment.

231.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the City HRL.

232.    By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

233.    Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to City HRL N.Y.C. Admin. Code § 8-502.

234.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by diverting monies Defendants should have expended to provide an accessible space to themselves.

235.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting

revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.

236.     The amounts Defendants diverted to themselves, and the unlawful revenues they gained, plus interest must be disgorged.

237.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

238.     Plaintiff re-alleges and incorporates herein all prior allegations set forth in this Complaint.

239.     Defendants continue to discriminate against Plaintiff in violation of the State HRL. N.Y. Exec. Law § 290 *et seq.*

240.     Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by N.Y. CRL §§ 40-c and 40-d for each and every violation.

241.     Notice of this action has been served upon the Attorney General as required by N.Y. CRL § 40-d.

## INJUNCTIVE RELIEF

242.     Plaintiff will continue to experience unlawful discrimination as a result of Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief Ordering Defendants to alter and modify their place of public accommodation to comply with the Accessibility Standards and the Human Rights Laws, is necessary.

243.    Injunctive relief is necessary to make Defendants' place of public accommodation readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

244.    Injunctive relief is also necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, State HRL, and the City HRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, the State HRL, and the City HRL, and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B.  Issue a permanent injunction ordering Defendants to close Diesel at 122 Spring Street to the public until Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, the State HRL and the City HRL, including but not limited to the violations set forth above;

C.  Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

36

D.  Award Plaintiff compensatory damages as a result of Defendants' violations of the State HRL and the City HRL;

E.  Award Plaintiff punitive damages in order to punish and deter the Defendants for their violations of the City HRL;

F.  Award Plaintiff the monetary penalties for each and every violation of the law, per defendant, pursuant to N.Y. CRL §§ 40-c and 40-d;

G.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA, the State HRL, and City HRL; and

H.  For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: December 8, 2022
New York, New York

Respectfully submitted,

**PARKER HANSKI LLC**

By:/s_____
Adam S. Hanski, Esq.
Attorneys for Plaintiff
40 Worth Street, Suite 602
New York, New York 10013
Telephone: (212) 248-7400
Facsimile: (212) 248-5600
Email:ash@parkerhanski.com